Bear Wilner-Nugent, OSB #044549
Bear Wilner-Nugent, Counselor and Attorney at Law LLC
620 SW 5th Avenue, Suite 1008
Portland, Oregon 97204
Phone: (503) 351-2327
Fax: (503) 914-6665
Email: bwnlaw@gmail.com
Attorney for Petitioner Chris Darrell Joseph Sage

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| CHRIS DARRELL JOSEPH SAGE, | No. 1:20-CV-_____ |
| Petitioner, | **PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| WILLIAM W. LOTHROP, Warden, FCI Phoenix, | |
| Respondent. | |

Petitioner Christopher Darrell Joseph Sage, through counsel, seeks habeas corpus relief under 28 U.S.C. §2241. Petitioner is not eligible for a sentence enhancement under the Armed Career Criminal Act (ACCA), but still received such an enhancement at sentencing upon his most recent conviction. Petitioner is also not eligible for career offender sentencing, but the sentencing court still treated petitioner as a career offender under the advisory guidelines. Due to these errors, petitioner is in custody in violation of the laws of the United States. The appropriate remedy for this breach is resentencing.

PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF
HABEAS CORPUS – Page 1

# I. INTRODUCTION

Petitioner was previously convicted of the Oregon offense of possession of a precursor substance with intent to manufacture a controlled substance. Ex. 3. This state offense is significantly broader than the equivalent federal offense. Under the line of cases beginning with *Taylor v. United States*, 495 U.S. 575, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990), and continuing through *Mathis v. United States*, 579 U.S. __, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016), and *Shular v. United States*, 589 U.S. ___ , 140 S. Ct. 779, 206 L. Ed. 2d 81 (2020), the so-called modified categorical approach demands that this offense should not be treated as an ACCA predicate because of this discrepancy in the breadth of criminalized conduct.

Neither do petitioner's other state drug convictions property qualify as ACCA predicates, taking into account the way in which Oregon's mandatory felony sentencing guidelines and statutes on point must be read in the wake of *United States v. Valencia-Mendoza*, 912 F.3d 1215 (9th Cir. 2019). Ex. 2, Ex. 4. Under Oregon's sentencing guidelines, petitioner could not have received, and in fact did not receive, sentences necessary and sufficient to qualify his controlled substance convictions as "serious drug offenses" under the ACCA. They also do not qualify petitioner for the career offender sentence that he received under the advisory guidelines.

Petitioner has previously challenged his prison sentence through a motion brought under 28 U.S.C. §2255. Since that litigation, appellate courts have promulgated new interpretations of relevant provisions of the ACCA in *Shular* and *Valencia-Mendoza*. These cases provide multiple alternative bases for petitioner's actual innocence of his ACCA sentence enhancement and career offender sentence. Under the rule of law from either case, petitioner lacks the qualifying prior convictions needed to support the sentence he received.

The court can hear this case under 28 U.S.C. §2241 because of the "savings clause," 28

U.S.C. §2255(e), which provides for a Section 2241 remedy in cases where Section 2255 relief would be "inadequate or ineffective."[1] Since Section 2255 does not provide for the ability to file a second or successive motion pursuant to a new rule of statutory interpretation, a successive motion for postconviction relief would be ineffective in this case. *See generally* 28 U.S.C. §2255(h). The statute that provides for challenges to detention "in violation of … laws … of the United States," 28 U.S.C. §2241(c)(3), rather, provides the appropriate form of relief.

## II. THIS SECTION 2241 PETITION IS PROPERLY BEFORE THE COURT.

Ordinarily, habeas corpus petitioners must first attempt to raise challenges to their continued detention or confinement under 28 U.S.C. §2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132 (AEDPA). A petition under Section 2255 is the method of first resort to challenge potentially illegal detention under the AEDPA. *Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012). There are situations in which the remedy that Section 2255 provides is inadequate, however, because it would not provide the type of relief a petitioner seeks or is ineffective because of a restriction it places on a petitioner's substantive claim. In such cases, 28 U.S.C. §2255(e), the "savings clause," operates to provide alternative causes of action under other habeas corpus statutes. Petitioner's case falls within the savings clause.

Section 2255 generally bars "second or successive" motions for post-conviction relief,

---

[1] 28 U.S.C. §2255(e): "An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." New substantive statutory interpretations may present valid claims for habeas corpus relief under Section 2241, therefore, even when Section 2255 relief is unavailable.

PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS – Page 3

unless they concern "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. §2255(h). Section 2255 thus does not allow for some meritorious claims based on other grounds, such as statutory revisions or newly pronounced statutory interpretations with retroactive effect. The savings clause provides for an alternative pathway to relief in these cases.

Such Section 2241 claims must pass through a threshold to move down that alternative pathway, though. A Section 2241 petitioner (at least, in a context like petitioner's) must both (1) "make[] a claim of actual innocence" and (2) have had no previous "unobstructed procedural shot" at making that claim. *Marrero*, 682 F.3d at 1192. Actual innocence includes "factual innocence of [petitioner's] crimes of conviction," "factual[] innocen[ce] of the crime that served as the predicate conviction for [a sentencing] enhancement," "statutor[y] ineligib[ility]" for a sentence, and "actual[] innocen[ce]" of a sentencing enhancement because the sentence "resulted from a constitutional violation." *Marrero*, 682 F.3d at 1192, 1194-1195. In *Marrero,* the petitioner's claim that he would no longer qualify as a career offender because of a change in the way that the sentencing guidelines would treat his prior convictions did not raise a cognizable claim under any of these exceptions to the general presumption in favor of channeling motions for relief through Section 2255. *Id.* at 1195.

Petitioner's claim in the instant case does fit through the threshold because petitioner is statutorily ineligible for his ACCA sentencing enhancement. Petitioner does not have the required number of convictions for "violent felony" or "serious drug" offenses, as those terms

are defined in the ACCA.[2] Because he has previously raised a challenge to his sentence under §2255, *see United States v. Sage*, 2017 U.S. Dist. LEXIS 167753 (D. Or. 2017) — and because, since that challenge, no new retroactive rule of constitutional interpretation or exculpatory evidence has affected his case — petitioner's claim is subject to subsection 2255(h). This petition, therefore, must arise under §2241.

Petitioner's case resembles *Allen v. Ives*, 950 F.3d 1184 (9th Cir. 2020). In *Allen*, the issue before the court was whether a challenge to a career offender enhancement based on the non-predicate status of petitioner's crimes of conviction could be heard under Section 2241. The *Allen* court held that this challenge was cognizable under Section 2241 and raised concerns that implicated the "inadequa[cy] or ineffective[ness]" of Section 2255. The retroactivity of the changes in the law that vitiated the predicate status of the *Allen* petitioner's offenses was key to the court's holding that his claims were valid under Section 2241. This distinguished *Allen* from *Marrero*. *Allen*, 950 F.3d at 1190.

Since ACCA enhancements and career offender enhancements under the sentencing guidelines are applied using similar rules, the reasoning in *Allen* should apply with equal force to petitioner's case.[3] Petitioner does not have the required predicate convictions to sustain his

---

[2] 18 U.S.C. §924(e) defines "serious drug offense" as any offense punishable under the Controlled Substances Act, 21 U.S.C. §801 et seq., by a sentence of 10 years or more, or an equivalent state law offense. "Violent felony" is defined as a crime that is "punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]"

[3] ACCA enhancements and career offender enhancements use substantially the same language in describing predicate offenses. Compare 18 U.S.C. §924(e)(2) with U.S.S.G. §§4B1.1–4B1.2. The career offender guidelines define "controlled substance offense" to include a broader range of conduct than what would suffice under ACCA, as a predicate offense under U.S.S.G. §4B1.1

sentence enhancement under the ACCA. Petitioner has not had an "unobstructed procedural shot" to present this claim as required by *Marrero*, 682 F.3d at 1193, and Section 2255 does not present any realistic opportunity to press this claim. Sections 2255(e) and 2241 should therefore operate to provide petitioner an opportunity to raise a modified *Allen* claim under *Mathis*, *Shular*, and *Valencia-Mendoza*.

The savings clause should be available in cases where the §2255 remedy is unable to reach an issue that nonetheless raises the specter of a "fundamental defect" in the proceedings with regard to sentencing. *See* Brandon Hasbrouck, *Saving Justice: Why Sentencing Errors Fall Within the Savings Clause, 28 U.S.C. § 2255(e)*, 108 Geo. L. J. 287, 313 (2019). This can occur when a prisoner is serving a sentence that is above what mandatory sentencing guidelines permit. It can also occur when a sentence enhancement is improperly applied, or when a prior conviction that was once considered a predicate offense is no longer seen as such.

Professor Hasbrouck proposes the following test for when the remedy provided by §2255 is "inadequate or ineffective to test the legality of [a petitioner's] detention": §2255 provides an ineffective remedy with regard to a prisoner's sentencing error claim when

> the claim (1) relies on a retroactively applicable decision of statutory interpretation; (2) was foreclosed by binding precedent at the time of the initial section 2255 motion; and (3) involves a "fundamental defect" in the sentence.

*Id.* The term "fundamental defect" encompasses situations in which the sentence includes an improperly applied enhancement that results in a sentence longer than the maximum ordinarily applicable guideline sentence for the given offense.[4] Without the ability to challenge such

---

must carry a punishment of imprisonment exceeding one year, whereas ACCA predicate "serious drug" offenses must carry sentences of 10 years or more.

[4] Hasbrouck argues that this should be treated similarly to a sentence that is longer than the mandatory maximum for the purpose of evaluating the sentence's legality: "The separation of powers concerns raised by a judicial alteration of the statutory sentencing range are identical

fundamental defects, Hasbrouck argues that §2255 would violate the constitutional prohibition against suspension of the writ of habeas corpus.[5]

In sum, petitioner's case meets the requirements of both the Ninth Circuit's test promulgated in *Allen* and the test proposed in Hasbrouck's article. Petitioner's claim relies on several retroactively applicable changes to the interpretation of the Armed Career Criminal Act, most notably *Shular* and *Valencia-Mendoza*. Petitioner's statutory arguments were foreclosed by binding Ninth Circuit precedent in *Marrero* at the time of his first Section 2255 motion. Petitioner had not had an "unobstructed procedural shot" to present his statutory claims, nor could he have presented them either under §2255 as it was interpreted at the time of his first motion, nor in a second motion under §2255(h). Because petitioner is in fact ineligible for the ACCA enhancement that controls his sentence, the fact that he received the enhancement constitutes a fundamental defect in the underlying proceedings that should be recognized as a valid ground for Section 2241 relief.

### III. PETITIONER'S CONVICTION FOR POSSESSION OF A PRECURSOR SUBSTANCE IS NOT AN ACCA PREDICATE OFFENSE.

Possession of a precursor substance with intent to manufacture a controlled substance is an offense under both federal and Oregon law. The federal version of this offense is a "serious drug offense" under the ACCA because it carries a potential sentence of 10 years or more. The federal list of precursor substances is located at 21 C.F.R. §1310.02. Oregon's list appears at Or. Rev. Stat. §475.940. These lists are not coextensive. The federal law criminalizes the possession

---

whether the error affects the maximum or minimum term," and "an erroneously imposed, recidivism-based sentencing floor is problematic on its own[.]" 108 Geo. L. J. at 315.
[5] *Id.* at 322 ("[T]hrough its jurisprudence, the Supreme Court has treated the savings clause [of §2255(e)] as a constitutional failsafe for section 2255").

PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS – Page 7

of substances that the Oregon law underlying petitioner's conviction does not, and vice versa.[6]

Under *Mathis*, 136 S. Ct. 2243, an offense can be an ACCA predicate only if its elements match those of a specific generic federal offense. The *Mathis* court rejected an ACCA sentence predicated in part on an offense under an Iowa burglary statute that allowed for conviction based on "unlawful entry into any building, structure, or … vehicle," because the Iowa offense was broader than the federal generic offense. The generic offense did not criminalize vehicular burglaries. The *Mathis* court reasoned that since the generic offense did not mention vehicular burglaries, the conviction could have arisen from conduct not contemplated by the ACCA, and so could not serve as an ACCA predicate offense. *Id.* at 2250.

Importantly for petitioner's case, the *Mathis* court explicitly rejected the notion that the actual conduct underlying the conviction was material to determining whether the conviction could serve as an ACCA predicate, instead saying that "the label a state assigns to a crime … has no relevance to whether that offense is an ACCA predicate." *Id.* at 2251. The court opted to distinguish between the elements of an offense and alternative means of committing those elements. It held that where the alternative means of committing a state offense are not coextensive with the alternative means of committing a generic ACCA predicate offense, that offense cannot serve as an ACCA predicate.

*Shular,* 140 S. Ct. 779, held that the *Mathis* analysis does not apply to cases involving "serious drug offenses" under ACCA. The *Shular* court held that the relevant analysis is instead whether the state offense involves the conduct specified in the federal statute. It eschewed the

---

[6] *Compare* 21 C.F.R. §1310.02 and Or. Rev. Stat. §475.940. Oregon's statute is broader in that it criminalizes the possession of sodium and lithium metals as precursor substances, whereas the federal regulation does not list these. Oregon's statute does not list some chemicals that the federal regulation does, *e.g.*, ethyl ether, and the federal regulation also does not list some chemicals that Oregon statute does, *e.g.*, malonic acid and ethyl malonate.

element-matching test of *Mathis*. The *Shular* court defined "involve" in the Controlled Substance Act to be synonymous with the phrase "necessarily require." *Id.*

This, rather than harming petitioner's case, helps demonstrate that the Oregon offense is not an ACCA predicate. Because the Oregon offense embraces conduct that is not criminalized by the federal statute, it cannot be an ACCA predicate "serious drug offense." A person can be convicted under the Oregon statute for conduct that does not violate any federal law. The conduct specified in the Controlled Substances Act's relevant provision, 21 U.S.C. §841(a)(1), includes "manufactur[ing], distribut[ing], or dispens[ing], or possess[ing] with intent to manufacture, distribute, or dispense, a controlled substance[.]"

Therefore, the relevant inquiry is whether the Oregon precursor substance offense satisfies any of these conditions. Since the Oregon and federal statutes do not have the same definition of precursor substance, with the Oregon statute criminalizing more than just the "immediate precursor" substances enumerated at 21 U.S.C. §800(23), it is not at all clear that the Oregon offense "necessarily require[s]" the commission of conduct prohibited by the federal statute. Petitioner's conviction for possession of a precursor substance is therefore not an ACCA predicate offense, no matter whether the *Mathis* or the *Shular* approach is used.

### IV. PETITIONER'S DRUG MANUFACTURING CONVICTIONS ARE NOT ACCA PREDICATE OFFENSES BECAUSE OF OREGON'S MANDATORY FELONY SENTENCING GUIDELINES.

In order to be considered "violent felon[ies]" or "serious drug offense[s]" under the ACCA, convictions must carry sentences of a defined minimum length: 10 years or more for "serious drug offense" convictions, or "a term exceeding one year" for "violent felony" convictions. 18 U.S.C. §924(e)(2)(a)(i) and §924(e)(2)(a)(ii); 18 U.S.C. §924(e)(2)(b)(i) and

§924(e)(2)(b)(ii). In *Valencia-Mendoza*, 912 F.3d 1215, the Ninth Circuit specified that the sentence the defendant actually faces after the application of mandatory state sentencing guidelines is the one that should be considered for the purpose of determining that an offense is a predicate for a sentence enhancement. *Valencia-Mendoza* states that the maximum possible sentence "assigned by the legislature" corresponds with the top of the sentencing guidelines range for an offense if no substantial and compelling circumstances allowing for an upward departure are found. *Id.* at 1223. This is important for petitioner's case because it vitiates any claim that his prior drug manufacturing offenses were of the "serious" type contemplated by ACCA. The maximum possible sentence "prescribed by law," 18 U.S.C. §924(e)(2)(a)(ii), for petitioner's offenses does not match the requirements of the ACCA.

**A. Oregon's Felony Sentencing Guidelines Are "Mandatory," Like the Washington Guidelines at Issue in *Valencia-Mendoza*.**

The holding in *Valencia-Mendoza* relies on an apparent distinction between the immigration law the *Valencia-Mendoza* petitioner had violated and the ACCA. This apparent distinction, however, evaporates under scrutiny.

In *Valencia-Mendoza,* the court differentiated the defendant's case from *United States v. Rodriquez*, 553 U.S. 377, 128 S. Ct. 1783, 170 L. Ed. 2d 719 (2008). In *Rodriquez,* the court affirmed an ACCA sentence that relied on a state recidivism enhancement. The petitioner had argued that the state recidivism enhancement, which turned a controlled substance offense with a maximum sentence of five years into an ACCA-predicate offense with a maximum sentence of 10 years, was not itself an element of the offense and could not therefore impact the sentence "prescribed by law" for the offense. The court rejected this argument because, "[w]hen a defendant is given a higher sentence under a recidivism statute — or for that matter, when a sentencing judge, under a guidelines regime or a discretionary sentencing system, increases a

sentence based on the defendant's criminal history — 100% of the punishment is for the offense of conviction." *Rodriquez*, 533 U.S. at 386.

The issue in *Valencia-Mendoza* was whether the sentencing judge was allowed to engage in an "open-ended inquiry" or whether, instead, the sentencing judge was bound by statute to consider a precise list of "statutorily defined factual circumstances[.]" 912 F.3d at 1223. Therefore, if the inquiry required of the sentencing judge points to a list of "substantial and compelling" circumstances that can lead to an upward departure, *Valencia-Mendoza*, not *Rodriquez*, controls the ACCA predicate status of an offense.

Oregon's felony sentencing guidelines are mandatory.[7] Or. Rev. Stat. §137.669 provides that they "shall control" the sentences for all crimes. Companion statutes §137.637 and §137.671 allow for, respectively, statutorily created determinate sentences that may supersede the guidelines in limited circumstances and the creation of permissible "substantial and compelling" departure factors that can be applied to guideline sentences.[8] Oregon's sentencing guidelines create what are referred to as "presumptive" sentences,[9] but these are similar to Washington's sentences at issue in *Valencia-Mendoza* and not those involved in *Rodriquez*, because the "substantial and compelling" inquiry is not open-ended, but is instead curtailed by OAR 213-008-0002 (enumerating aggravating and mitigating factors that can be used at sentencing).

---

[7] Or. Rev. Stat. §137.669 states, in its entirety, "The guidelines adopted under ORS 37.667, together with any amendments, supplements or repealing provisions, shall control the sentences for all crimes committed after the effective date of such guidelines. Except as provided in ORS 137.637 and 137.671, the incarcerative guidelines and any other guidelines so designated by the Oregon Criminal Justice Commission shall be mandatory and constitute presumptive sentences." Or. Rev. Stat. §137.667 provides for the creation of a committee to develop and refine the sentencing guidelines. Section 137.671 allows the committee to adopt, as guidelines, administrative rules setting forth "substantial and compelling reasons" for upward departures.
[8] The §137.671 departure factors are collected at Oregon Administrative Rule 213-008-0002.
[9] *See, e.g.*, *State v. Berg*, 115 Or. App. 254, 257 n. 1, 838 P.2d 73 (1992) ("application of the guidelines is mandatory, but the sentences are presumptive").

Because of Or. Rev. Stat. §137.671 and OAR 213-008-0002, the Oregon sentencing guidelines are structured in much the same way as Washington's, and should have the same effect on whether a sentence is in fact the maximum prescribed by law.

**B. Under Oregon's Sentencing Guidelines, More of Petitioner's Purported ACCA Predicate Offenses Are Nothing of the Kind.**

Petitioner has not committed a "serious drug offense" within the meaning of ACCA when Oregon's sentencing guidelines are understood as required by *Valencia-Mendoza*. Petitioner's precursor substance offense is an invalid ACCA predicate under both *Shular* and the Oregon sentencing guidelines. At the time of the precursor substance offense, petitioner had no prior offenses. The sentencing court did not find any substantial and compelling circumstances to depart from the presumptive sentence in that case. Petitioner was accordingly sentenced in felony sentencing guidelines gridblock 6I, which carries a maximum of 90 days jail as an initial condition of the presumptive sentence of probation. Ex. 3.

Petitioner's subsequent convictions for unlawful manufacture of methamphetamine and unlawful manufacture of a Schedule II controlled substance were sentenced in felony sentencing guidelines gridblocks 8G and 4C, respectively. Ex. 2, Ex. 4. In no case other than his most recent state conviction was petitioner ever subject to a finding of substantial and compelling circumstances to depart upward. Petitioner's presumptive guideline sentences never exceeded 22 months prison, and his actual sentences for drug offenses never exceeded 180 days. Petitioner was therefore never eligible under Oregon law for a sentence of 10 years or more, and so never committed an ACCA predicate drug offense.

Finally, petitioner was also convicted of assault of a public safety officer. Ex. 5. For this offense, he was sentenced in felony sentencing guidelines gridblock 6A. Petitioner did receive a 25-month prison sentence for this count, which does amount to a term exceeding one year for a

violent felony offense. But still, petitioner's sentence enhancement cannot stand.

Even if the assault conviction remains as an ACCA predicate offense, no ACCA sentence can be supported by a single predicate offense (nor even a pair of simultaneous offenses). The statute, by its own terms, requires three predicate convictions committed on different occasions. 18 U.S.C. §924(e)(1). Because the drug priors do not qualify, petitioner's sentence enhancement under ACCA is unlawful and cannot stand.

### V. PETITIONER SHOULD NOT HAVE BEEN SENTENCED AS A CAREER OFFENDER.

An adult defendant convicted of a felony crime of violence or controlled substance offense may be sentenced as a career offender under the advisory guidelines if they have at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. §4B1.1(a). Again, the convictions must arise from separate incidents, so the two counts of assaulting a public safety officer arising out of the same incident, Ex. 5, do not make petitioner qualify by themselves. U.S.S.G. §4B1.2(c). The question here is whether petitioner's precursor substance and manufacturing offense convictions qualify as "controlled substance offense[s] under the following definition:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense…

U.S.S.G. §4B1.2(b).

The first problem is that the federal definition, however expansive, does not extend by its own terms to state precursor substance offenses such as petitioner's. To be sure, the *federal* offense of unlawfully possessing a listed chemical with intent to manufacture a controlled

substance, in violation of 21 U.S.C. §841(c)(1), is a controlled substance offense for the purpose of the career offender guidelines. §4B1.2 app. n. 1. But no state equivalent to that offense is listed anywhere in the guideline.

The second problem is the same as the problem with two of petitioner's purported ACCA predicates. Again, in *Valencia-Mendoza*, 912 F.3d 1215, the Court of Appeals held that the sentence the defendant faces after mandatory state sentencing guidelines are applied is the one that the federal court should consider in the course of determining whether a previous conviction is a statutory predicate for a sentence enhancement. The maximum possible sentence "assigned by the legislature" is the high end of the applicable state sentencing guidelines range in such a case. *Id.* at 1223. In petitioner's case, he faced, at most, two years probation, including up to 60 days jail, for his 2002 conviction for unlawfully manufacturing a controlled substance in Schedule II. Ex. 2.

Finally, for petitioner's 2007 conviction for unlawfully manufacturing methamphetamine, although petitioner did receive an upward departure sentence to 24 months prison, Ex. 4, that was on the basis of recidivism, as the judgment itself explains. Petitioner's 4C state guidelines score did not and could not, by itself, qualify him for over a year in prison.

**CONCLUSION**

For the foregoing reasons, the court should grant the petition and issue a writ of habeas corpus providing that petitioner shall be resentenced according to law.

RESPECTFULLY SUBMITTED November 16, 2020.

/s/ Bear Wilner-Nugent
Bear Wilner-Nugent, OSB #044549
Attorney for Petitioner Chris Darrell Joseph Sage